All right. Thank you, Your Honor, and good morning again. We have two principal arguments we want to present this morning. First, the Department of Agriculture complied with NEPA and the Endangered Species Act when issuing the state petitions rule. And second, even if there was some cause for remand under those statutes, the district court abused its discretion in reinstating the previously invalidated and enjoined roadless rule as an interim remedy. I'd like to start with the merits issues and come back to the injunction time permitting. Could we agree on a plain definition of rule? Is it strictly procedure or is it procedure and substantive? I'm not following your question, Your Honor. Provisions of a rule adopted by the service. Yes. Is it strictly a procedural rule? In other words, a methodology of adjudicating the environmental impact of a particular project? Or does it go to the issues of whether the project is hurting the environment and in what respects? Is that what the rule is intended to do? Well, the state petitions rule, Your Honor, was an invitation to rulemaking. The state petition is a methodology by which you look at it on the individual state basis. That's correct, Your Honor. And is that rule restricted to procedure? Yes, Your Honor. There's nothing in it that's substantive. What the rule is, it's an invitation. It doesn't set management prescriptions for inventory roadless areas, and that's the critical point. What it does is invite the States to participate in a process whereby prescriptions for inventory roadless areas will be set or may be established on a State-by-State basis. Is that the intent of Congress? In which respect? Agency adopt a set of procedural rules with respect to the adjudication of disputes involving the forest. Well, there's been no claim, Your Honor, that the state petition's rule standing alone is in violation of the framework statutes that give the Department of Agriculture and the Forest Service authority to manage the forest. They certainly have authority to manage the forest, and they certainly have authority to set procedures where certain things would be considered. And it hasn't been alleged by the plaintiffs in this case that there's any statutory problem with establishing these particular procedures. In fact, Your Honors, had the state petition's rule been issued from the outset without, you know, if the agency had not first issued the roadless rule, there's no dispute, I think, in this case that the rule would have been effectively procedural, solely procedural in impact. And the counsel. Picking up on Judge Beezer's question, I want you to consider this issue because it's what bothers me. You say that the state procedure of a state petition rule is solely procedural. But in the Kootenai case, we have a finding by this Court that the roadless rule gave greater protection to the roadless area. Yes, Your Honor. Than the state petition rule. Yes, Your Honor. And if there was a finding in Kootenai that greater protection was given under the roadless rule than under the state petition rule, we may disagree with that and say, no, the protection is the same. It depends on the EIS that each project and each force plan adopts. We can't determine whether there's greater protection under one than the other. And that may be, if it were original matter, a very interesting issue. But it's not an original matter. Are we not bound as a three-judge panel? The finding in Kootenai Tribe, which is at page 22 of Magistrate LaPorte's decision, says greater protection. That sounds like substance to me. Your Honor. Greater protection is given under the roadless rule than under the SPR. As far as I'm concerned, that's the end of the story. Your Honor, we don't dispute that if there were a nationwide prescription, that prescription would impose greater protections for the inventory roadless area. That concession ends the issue. It doesn't, we submit, Your Honor, because the roadless rule never went into effect, Your Honor. But for three months it was in effect. Well, let's look at it from the perspective of the Forest Service and the USDA when they issued the rule. The ruling was in May 2005. At that time, the rule was not in effect. It had been enjoined. In July 2003 was when the injunction occurred, looking backwards. Prior to that, two years prior to that, in May 2001, the Idaho District Court preliminarily enjoined the rule. So what you had is essentially an unbroken injunction from before the rule went into effect until the point that the ---- The effect of our decision in Kootenai was to undo the district court's injunction, preliminary injunction in Idaho. Absolutely, Your Honor. And the Wyoming decision does not occur until three months later. That's right, Your Honor. Okay. So what happens in the three months? The rule is not in effect? The rule is in effect for those three months. But as we explained in our brief, what you have to do is look from the point of the rulemaking. And if you're in 2005 and you're looking back, you're seeing that from the time, from the very beginning when the inventory roadless areas were recognized as unique areas, they had been managed pursuant to the National Forest Management Act and the unit-by-unit management regime. But the legal posture of the roadless rule is that it was in effect between the decision in Kootenai and the decision in Wyoming. I'll get to the Wyoming decision in just a minute because I have problems with that. But for a three-month period there, there is no injunction and the rule is it. That's true, Your Honor. Okay. So you have a final rule. It's in effect. That's correct, Your Honor. But it's not in effect at the time that the State Petitions Rule takes effect. And when the Forest Service was looking backwards from May 2005, for the vast majority of time, the rule wasn't in effect. Okay. Well, let me get to my next point. What is the effect of the Wyoming decision in the Ninth Circuit? There's a distinction between the ruling on the law and then the actual injunction. The effect of the injunction is to enjoin the Forest Service. Why would the Forest Service be enjoined within the Ninth Circuit? We have circuit conflicts all the time. Yes, Your Honor. This isn't a circuit conflict. This is a district court issue. Well, let's assume it went to the Tenth Circuit and the Tenth Circuit summarily affirmed it. Is the last-in-time rule applicable here? Whoever gets last gets to trump everybody else? It's not the ñ we defended the roadless rule. The question is not the validity of the roadless rule and the merits. The question is, was it in effect? Well, that's what I'm trying to figure out. What is the effect of the Wyoming rule on the Ninth Circuit? I understand that the Wyoming rule may have enjoined the rule every place else. How could it possibly overcome our decision in Kootenai? The decision in Kootenai was on a preliminary injunction. But in any event, the Wyoming injunction was a nationwide injunction. The Wyoming district court said ñ But how can it pretend to enjoin if we've already said the rule's okay? And it's been in effect now for three months. It did not say the rule was okay. This court overruled a preliminary injunction that didn't go to a final decision. The rule was not finally adjudicated in the Ninth Circuit as okay. The Wyoming court had been, was the only court that ever issued a ruling, a final ruling on the validity of the rule. And, again, we don't disagree with the legal ruling. That's not the point. The point is the effectiveness of the rule, and it was not in effect. And the question is, when an agency starts to take an action and a court enjoins the agency, and then in the time that it's enjoined, it's not meaningfully in effect, the agency says, look, I'm going to take a different course. We're going to try something different. When the agency backs up and starts over again, does the agency have to presume that the rule that was stopped in its tracks is part of the status quo? And if you look at the actual circumstances at the time of the ruling and through from the point the roadless rule was initially promulgated, there is essentially an unbroken status quo where inventory roadless areas are managed pursuant to the preexisting framework, the framework under the National Forest Management Act, and not pursuant to the roadless rule, because, again, these injunctions stopped that rule from being in effect. And, Your Honor, we think that the district court erred in its analysis in this case for two fundamental reasons. First of all, the district court failed to give any deference to the agency's determination. Your Honor, this is APA review. There is no rule of law under CEQ regulations or in prior precedent that if a rule is enjoined before it ever goes meaningfully into effect, that an agency must consider that rule to be part of the status quo when determining the environmental impacts of an alternative rule. Your Honor, we submit that if this Court were to make a rule of law on that issue, that the opposite rule is the common sense rule, that when an agency stops from implementing a particular procedure by an unbroken or virtually unbroken string of injunctions, that the agency can start over again, and when it does start over again, it needn't treat the rule that was enjoined as being part of the status  quo. But this Court isn't to make the rule in the first instance. This is APA review. Again, and the only issue is did the agency act reasonably in 2005 in looking back at essentially what was the status quo for the most part for those periods of time in determining, look, the National Forest Management Act provided that regulatory framework that was the status quo. So has Congress retained any authority with respect to rulemaking as they do with the courts where our rules go to the Supreme Court and then to Congress? If Congress wants to modify or change them, they may, and then if they just do nothing, they become effective on counsel all over the country on a uniform basis? Your Honor, I'm not sure I understand your question. Is it the practice of every administration that comes into office to change the rules? Is that the procedural rules for the conduct of business in the forest? Is that what's going on? Your Honor, when the new administration came in, this rule was not in effect. If the new administration had decided, look, we just want to change policy now before the rule goes into effect, they simply would have suspended the effective date of the rule, came up with an alternative, there would have been no environmental effect as a result of this rule. All we are saying in this case, we're not defending the decisions of the Wyoming Court on the merits. All we are saying is when an Idaho district court enjoins this rule before it goes into effect, when a Wyoming district court piggybacks on that injunction and issues a new injunction almost immediately when the original injunction is lifted, that the agency has been stopped in its tracks. It has not been able to issue this rule. And the effect of that, the basic effect of that is the same as if the agency had before the rule went into effect, it's a do-over. And in doing a do-over, the agency is reasonably can have a clean slate for purposes of NEPA and ESA analysis as well. I'm going to defer to Mr. Horngren unless there are questions at the moment. Horngren. Thank you, Your Honor. On behalf of interveners, I'm Scott Horngren, and Carl Withrow is with you. We wholeheartedly agree with the government's initial position that this was a rule about rulemaking, a procedural rule, and that the agency was right in concluding that because it was a categorical exclusion, they didn't have to do a nationwide EIS. We would also argue that if the state petition rules in section 553 of the APA. Nothing, in our view. So 553E, which deals with the right to file a petition, does not differ at all from the SPR. We agree. And because. So there was no reason, then, to why did you even adopt the state petitions rule if you already had section 553E in place? That's a good question. And in this particular case, because it's like 553E, we believe that the Supreme Court's decision in public citizen is applicable here. In essence, what we have is because USDA has no discretion to stop a state from submitting a petition under 553E, NEPA doesn't require USDA to analyze the effects of allowing a state to submit the petition. And so the Supreme Court emphasized in the public citizen case that the lack of agency discretion over an action insulates that action from NEPA. And here, just on Thursday, the State of Idaho did adopt a state petition, and they did it despite the injunction of the magistrate judge through 553E. And so you go back to NEPA law, and you've got to roll up your sleeves and dig into NEPA law, but in this particular instance, where you have a procedural rule that basically does nothing more than the 553E, that particular rule is not a major problem. What was the purpose of the time limit in the state petitions rule? The purpose of the time limit, you'll hear from the appellees, was so that you could have all these roadless areas developed in States that didn't have a petition. So was the time limit the time in which States could petition in order to make areas roadless or in order to be able to construct roads in areas that were previously roadless, or both? Both. And for example, the Idaho petition was a big nothing. What happens at the end of the expiration of that time period? Nothing. And that's the point here. And interveners are not. So it sounds like the state petitions rule really was a big nothing. That is our view of that, because what happens is you have, for these roadless areas, you have two levels, two levels of NEPA analysis under what the government has argued. A forest plan level, which is, when you step back, this is all about forest plans and what's going on on the national forest. And at the first level, the forest plan looked at how to manage all these roadless areas in a NEPA document. And EIS was prepared for each and every forest. And then, as Judge Bea will remember, if you want to go into roadless areas in a project in the school fire up there on the Umatilla National Forest, you have to do another NEPA review. And our position is, and we urge this Court not to adopt a rule here that says once you have prepared a nationwide EIS on a rule, that the only way you can change that under NEPA is to do another wide nationwide EIS. NEPA is flexible. The agency has the discretion. And they can decide, as they did in the school fire case, for example, in the school fire analysis. And if that analysis for a roadless area looks at the cumulative effects and looks at the site-specific effects, the Forest Service has complied with NEPA, and they can comply with NEPA that way. And we'd urge you, in conclusion, to reverse the magistrate's judge holdings that the State patrician rule about rulemaking does not require a nationwide EIS. Thank you. Thank you. Ms. Wilson. Good morning. May it please the Court. Hi. I'm Mary Sue Wilson, Senior Assistant Attorney General with the State of Washington, arguing on behalf of the State Appellees today. I plan to use eight minutes, and I'd like to focus on the NEPA issues. The four States jointly pursued this action because we believe preserving the character of our natural resources in our undisturbed forest lands is critical to protecting natural resources, including critical habitat, species, recreation, tourism, avoiding impacts from flooding and landslides. But isn't that exactly what is done on an individualized basis in every forest plant? Except it's not done in Washington to have one big plan for the whole United States with a few exceptions, but it's done as to every project in every forest that is going to be developed or not to be developed. All those wonderful reasons which you've given are necessarily and statutorily required to be looked at in each one of those plans. What you're telling us is that once a national plan is in force, you cannot go to a State decentralized plan unless you do a new EIS of the effect of the State decentralized plan, right? Yes, Your Honor. Even though the same very issues as to every one of those States will be dealt with on an individualized basis under the same statute and with the same considerations. That's what you're saying. No, Your Honor. We're not saying that the same considerations will be considered, and we're not saying that this is the same thing as if the Forest Service had never acted. Core principle under NEPA is that NEPA is required when the government takes an action, and that includes programmatic actions such as rulemaking. Government does not dispute that. Then you're saying the rule is substantive, right? Yes, we are, Your Honor. We're saying the repeal of the nationwide prohibitions on road building and timber harvest in our roadless areas is every bit. For the substantive rule of law that you're now inserting into a procedural program. It's our position that this is not procedural only. The 2005 rulemaking by the Forest Service was both the repeal of the 2001 rule and the replacement with a State petition. Explain to me. An EIS can be done for a small parcel of land or the whole darn thing at once, can't it? Because Congress hasn't said anything different. An EIS is required whenever the Federal agency engages in a major Federal action. It seems to me that the critical point in your argument is whether or not the State petitions rule repealed the roadless rule. That's exactly the critical point. I explored that with Mr. Smeltzer. Now, can you explain why it repealed it? It doesn't say anything about repealing it, does it? In the language of the new rule, it doesn't say that we're replacing the old rule. But there's two statements at the same time that the agency replaced the rule that showed that they intended to repeal and that they weren't relying on the Wyoming District Court's action and that they intended to remove the 2001 rule from the CFRs for all the time and eliminate the possibility that the 10th Circuit could How did they do it? Where does it say that they repealed it? In the 2005 Federal Register at ER 159, they said, regardless of these lawsuits, regardless of these lawsuits, the Department has concluded the 2001 rule's inflexible nationwide rulemaking approach is flawed and there are better means to achieve protection. Then, a couple of weeks later, when they went to the 10th Circuit and asked the 10th Circuit to dismiss the pending appeal as moot, they said, the roadless rule has been wholly superseded by the U.S. Department of Agriculture. Even apart from the District Court's ruling, the 2001 rule can no longer govern management of roadless areas. Those statements show that the Forest Service was acting to repeal the rule because the Forest Service had decided that the rule was the wrong policy and program. And they have the discretion to do that. We are state governments. We understand the discretion to change your mind. Our point is that when you change your mind, when you decide a nationwide prohibition that this Court has recognized is subject to an EIS, when you decide to repeal that nationwide prohibition on roads, then you need to also look at the environmental impacts of that repeal before you move forward. So they have the discretion, but they don't have the discretion to ignore the required procedures, including NEPA in this case. Again. Okay. Let's, if the Wyoming decision remains in effect, does it affect the 9th Circuit? Did the Wyoming decision apply to the 9th Circuit? Important fact about the Wyoming decision, and I think, are you referring to the one from a month and a half ago? No, I'm referring to the one from 2003. Important fact is that the 2003 Wyoming decision was not final. It was on appeal. Yes, but it was a permanent injunction. It was not a preliminary injunction. It was a permanent injunction, but it was on appeal. And, in fact, we could expect the 10th Circuit might find the reasoning of this Court and Kootenai Tribe to be more persuasive than the district court in Wyoming, and there was a likelihood that it would be reversed. Okay. So what is the effect of the government telling the 10th Circuit that the state petitions rule was intended to supersede the roadless rule? If the government hadn't made that, hadn't told the 10th Circuit that, would the 10th Circuit have had reason to go ahead and decide the case? Well, the 10th Circuit would have considered core principles of mootness. Has this case been superseded? What would have mooted it? Your Honor, we don't think anything would have mooted that. If, in fact, the United States didn't intend to replace the roadless rule and intended to leave the roadless rule as a possibility to be revived or reinstated by the 10th Circuit, then the 10th Circuit could have gone on to address those issues. Ms. Wilson, let me ask you this. The 10th Circuit, based on the government representation or whatever else was in the SPR, the state petition rule, supersedes the roadless rule, and therefore the action on the appeal of the validity of SPR or the roadless rule is now moot, right? Isn't that an implicit finding by the 10th Circuit, that the state petition rule is And if we find otherwise, aren't we creating a circuit split? There may be a circuit split on the 2001 rule because this Court addressed the 2001 rule. As to the 2005 rule, the merits of the state petitions rule is not in front of the district court of Wyoming or in front of the 10th Circuit. Well, but it was necessarily in finding that the SPR supplanted the roadless rule. Isn't that an implicit finding by the Court, 10th Circuit, that this SPR was validly arrived at? I mean, were they just saying, well, this is not validly arrived at, but we're going to adopt it anyway and dismiss the case as moot? Isn't that a necessary finding? Again, I'm not sure if I'm understanding your question, Your Honor. In 2005, when the 10th Circuit looked at the developments, they weren't looking at the validity of the new rule. They were taking the Forest Service at their word. We've decided that the 01 rule is not the way we want to regulate anymore. We want to replace it with the 05 rule. They said, okay, litigation related to the 01 rule no longer needs to go forward. That was their decision. They said nothing about the 05 rule, and then we initiated the action in the Federal  They said, okay, you can, Forest Service, repeal your 01 rule, but when you do so and you acknowledge you're the one that is eliminating that from the books, you need to follow the higher procedures. But when the government represented that the SPR supplanted the roadless rule, the 10th Circuit was bound by that representation, regardless whether the SPR was validly enacted as a rulemaking issue or not? We start with a presumption that rules are valid, and since the litigation pending in front of the 10th Circuit didn't get at the merits of a rule that hadn't yet been adopted, the 2005 rule, then the 10th Circuit presumed we have a valid rule replacing the former rule. But the parties in the 10th Circuit had the same interest as you have here. They could they wanted to say that the SPR was not validly adopted, right? So if the case wasn't really moot because the roadless rule should be enforced, I mean, I would think. The parties to the Wyoming case, there are parties on both sides. The environmental parties. Environmental defendants wanted either for the 10th Circuit to reverse the Wyoming District Court or for the 10th Circuit to do what it did, which was said since we are deciding that this case is moot, we're going to vacate the District Court's decision on the merits and on the injunction. I'm going to reserve the rest of the time for Ms. Boyles. May it please the Court. My name is Kristen Boyles, and I want to address the Endangered Species Act issues and the Remedy Act issues here. But before I do that, I want to talk about some of the things that we've been talking about this morning. The effect of the Wyoming District Court decision on this Court is absolutely none. And that's very clear about the way the Federal circuits work, that the Wyoming District Court's decision will make its way through the 10th Circuit, but that is not binding on this Court, and this Court is instead guided by Kootenai trial. If all we did was reverse a preliminary injunction, and the Wyoming Court issued a contention that the Wyoming decision was valid every place except the 9th Circuit? It's actually my position, Your Honor, that the Wyoming injunction was only valid in Wyoming, where it had control over the rule. The Forest Service was enjoined nationwide, but the other courts are not bound. That's why we have circuit splits. That's why things get worked out amongst the different courts before they ultimately arrive. The service is enjoined, but not the courts. We're not the ones who are putting out forest fires here. Well, there's no forest fires at issue here. In fact, these are wilderness areas. I understand. We're not building roads, and we're not taking down roads. We're not operating the bulldozers. We're only the courts. So if the Forest Service itself is enjoined, was it enjoined inside the 9th Circuit? Yes, Your Honor. It was enjoined in front of the 9th Circuit. But the question is, what did the Forest Service have to do when it wanted to change the rule in 2005? It's the repeal of the roadless rule that's at issue. Well, the critical question, I think, for me is, did they have to repeal, whether they repealed it sub silentio or whether they repealed it expressly, did they have to repeal the roadless rule in order to put in place the state petitions rule? And I submit, Your Honor, that they did. And I submit that when you have a nationwide rule that has gone through rule that has gone into effect, that has gone through the rulemaking process. Even if it's enjoined nationwide. Even if it's enjoined, until you get that final adjudication all the way through the systems, it has got to be considered. But we had an adjudication at least through the district court. And it was the case in the 10th Circuit was on appeal. It, in fact, had been argued. And then the repeal of the rule stopped not only the 10th Circuit argument, but it also stopped all the other challenges. There were challenges to the roadless rule across the country. In fact, the Kootenai Tribe case, which was preliminarily, the injunction was addressed before Your Honors on the preliminary injunction, had gone back to the district court, it would have worked its way up, too. But the Forest Service's repeal of the substantive protections of the roadless rule stopped all of that litigation. And so that there was no litigation then going on in any circuit about the validity of the rule. And so I want to be explicit about one of the broader issues in this case, which is not really an environmental core principle at all. It's when administrations change, Federal agencies may change the rules and regulations promulgated by prior administrations. And that's fine. And that's their right. But when they do that, when a new administration changes prior rules, they have to go through the procedures and the rules and the governing law in order to do that. That is the only way it makes sense in our system to be able to change rules dramatically like this. Your Honor? If they're strictly procedural rules having no direct effect on the environment, why can't they just repeal them? I disagree with opposing counsel that it's a strictly procedural rule, Your Honor. I believe it is a substantive rule. The Forest Service was within their bounds to enact the roadless rule when it did under its Organic Act. Congress authorized rules relating to substance? Yes, Your Honor. Congress gave them. They're not necessarily consistent with statute? I think we've gone beyond that. Maybe someone might raise that as a challenge to the 2001 rule, but that is not what is at issue here. Here we don't have a concern about whether the 2001 rule is valid. Well, how far do you want to go with this? The Forest Service believed it was acting in 2001 consistent with its statutory mandates from Congress, and it believed it was acting in 2005 with its statutory mandates from Congress. That's not the point. It's not whether they could or they couldn't enact roadless area protections. It's when they make those decisions do they have to go through the environmental analysis and the public input that is necessary to do so. And that's especially true when you talk about things that were already decided here, undisputed in the record, that the Forest Service itself had found that the without a nationwide rule, the roadless values were disappearing in a piecemeal fashion, that the roads were a drag on the economic system of the Forest Service for repairs, and that endangered species and watershed health was being hurt by the lack of a roadless rule. And then we get the roadless rule. But in the repeal of the roadless rule, we have no analysis of any of those factors. We just have a very blunt repudiation that we are now changing our minds. And that's the problem in this case. And that's why the remedy that the district court put in place was exactly right. She did three things. She first found the roadless repeal had been invalidly promulgated, and so she set aside that rule. And that's correct. Sometimes courts leave in place rules pending further proceedings, but only when there's for environmental protective reasons. The second thing she did was she put in place the rule that was previously in force, and that was the 2001 roadless rule, because at this point in time, we had the Tenth Circuit vacating as moot the decision of the district court from Wyoming. And that's gotten a little complicated now that we have the district in Wyoming refinding recently, as the opposing counsel submitted, that the roadless rule is, again, invalid. But that issue will work its way through the Tenth Circuit. That is not the issue in front of this court. In fact, there's motions for stays pending appeals submitted by both the Forest Service and the Environmental Defendant Intervenors. There's motions going on in the district court here in California about those things as well. So that is ongoing. But at the time that the judge ruled in 2006 here, there was no abuse of discretion about the remedy that she enacted. I think that the common-sense rule is that when a new administration changes its mind, it has to go through rulemaking. And opposing counsel noted that there was an unbroken string of injunctions against the roadless rule. Not sure what unbroken string of injunctions he's referring to, because what we had was a preliminary injunction from Idaho, this court reversing that, and then the injunction from the District of Wyoming. It's not much of an unbroken string. The reason why that the administration adopted the roadless repeal in the first place as Mr. Horngren talked about it being the same as the state petitions part being the same as 553E of the Administrative Procedure Act is because they needed to repeal the rule. He's exactly right. The state petitions portion of the rule, you can get there under the Administrative Procedure Act. You don't need that rule. So why did they do it? Because they needed to repeal the rule. They were very explicit, as Ms. Wilson talked about, in the Federal Register notice repealing the rule. They were very explicit to the Tenth Circuit that they were repealing the rule, they were wholly superseding it, and the issue was moot. So your contention is that the state petitions rule really was nothing more than Section 553E codified or, I'm sorry, put into the rules? I wouldn't go that far, but they didn't need the state petitions rule to do what they wanted to do. So your contention is that the only reason they adopted the state petitions rule was to do what they couldn't do under, with the existence of 553E, namely, repeal the roadless rule? I would agree with you, Your Honor. That is exactly right. And they're not the same. Judge Baio, you were talking about why did we need to do this at a nationwide scale, and isn't it the same forest by forest? And the evidence in the record is that that's not the case, that the Forest Service had found that they were, in fact, losing these roadless areas by the piecemeal look. There were forests that made a decision in Washington that were different than the forests in Oregon, and the animals, the rivers and salmon that are in that area don't care which state they're in, that they needed that nationwide look. And so when we have that nationwide look and then it's taken away, you really are taking away, making a substantive change on how these forests are going to be analyzed. Isn't that what Kootenai Tribe already held? That is what Kootenai Tribe already held, Your Honor. And it is a preliminary injunction decision, but it is a decision that goes in-depth in the merits and looked at what was the effect of putting this. And in fact, I believe opposing counsel said that they admitted that the roadless rule protections were greater than we had without the roadless rule. Your Honor, if there's nothing further, I would join the argument of the states and ask the Court to affirm the district court in all respects. Okay. Thank you, counsel. Mr. Smeltzer, would you address what the Department told the Tenth Circuit in 2005? Yes, Your Honor. The Department told the Tenth Circuit that the rule had been replaced and therefore that the litigation was moot. Okay. So if they told them that the rule was replaced, then that does – that moots the Tenth Circuit. It moots the Wyoming court's decision. Absolutely, Your Honor. And it tells us that the state petition's rule was intended to repeal the roadless rule. Intended to replace, Your Honor. Okay. Is there a difference between repeal and replace? We're trying to stay away from repeal only because – I understand that. But I understand rhetorically you're trying to do that. You're doing a good job so far, but – Because the rule had been enjoined, it wasn't something with substantive effect. But let's talk about repeal. Let's go right to repeal and suggest that if – call this a repeal, if you want. Our argument is not that that is the significant factor, the fact that the agency wanted to change policy. The significant factor, Your Honors, is the context in which the agency decides to change policy. The context is this. The rule was not in effect. The roadless rule that was replaced was enjoined. So the point is that you can step back and you can change policy with – and effectively take no action in the direction – you know, the agency started going one way. The court said stop. There's no question the court said stop. And there's no question that for most of the period after that rule was issued, the courts had said stop and the agency was enjoined. Whatever the legal effect of this rule in other circuits, the agency couldn't go forward with the rule because the court said stop. Okay. In that context, the agency said, look, we want to go a different direction. So when we go that different direction, we – it's reasonable to just start over again at the beginning where we were stopped in terms of environmental effects. That's the argument we're making, Your Honor. Not that we didn't change direction. Absolutely. There was a change in direction. What did the State Petitions Rule do that was different from 553E? It doesn't have to do anything specifically different than 553, but it did set out procedures and announce a change and it set out a framework for States to come in. It's a very, very modest rule at best, if it's a rule at all. It pushed – again, you can push all the State Petitions part aside, even if the only thing the agency did was to replace, to announce we are now replacing the rule. Again, at the time they announced it, they had been stopped from doing anything under this rule. So this rule wasn't allowed to have any environmental effect. So let's suppose that the agency said, what we'd like to do is we'd like to go back to the prior system. Let's just start – let's just – we'd like to get just a do-over and pretend that it's January 1st, 2001 and we don't have a roadless rule that it never existed. That's right, Your Honor. Now, how could the department have done that? Well, because there are two principles when a department changes its mind. The first is the department has to give a reasoned explanation pursuant to its statutory authority, the National Forest Management Act, for why it's managing lands in this way. The department did that. The department explained that this rule was a one-size-fits-all that didn't work well for managers. Right. But doesn't it have to repeal it? There's no claim – there's no claim that there's any violation of the National Forest Management Act. Counselor, if it's – to give you my scenario, that there is no State Petitions rule, we simply want to go back to the prior system. You have to replace it. Yep. But you're not replacing it. You're replacing it with identical text of what you had before. You're really just repealing it. Okay. I'm granting you that, Your Honor. What I'm saying is if you want to call that a repeal, fine. But if you're – But you still have to look at the context in which the repeal took place. But once you say that you are repealing the rule, don't you have to satisfy NEPA? Yes, Your Honor, to the extent that you have to look at the context of the rulemaking and decide is your rule going to have an environmental effect. But look at it this way. If they had decided right from the outset, let's repeal this rule before the effective date comes apart – comes upon, again, the new administration came in before this rule went into effect. If the new administration said – If the rule had been effective for one day and then the administration decided to repeal it the next day – Yep. Does that trigger NEPA? That's not this case, but – Does it trigger NEPA? The agency would have to look at that and then look at the NEPA that had been done. And under that circumstance, probably the NEPA that had already been done for the no-action alternative would have covered the agency deciding, look, we don't want to go in that direction. Again, you have to look at the context in which the agency – If the rule had been in effect for five years and an administration decided to repeal it, would they have to satisfy NEPA? They would have to look – it depends on – yes. I mean, there would be a different case. The court would have to look at this differently because then the agency couldn't simply say, well, the rule hadn't been in effect and our baseline is the preexisting circumstance. But there – as we say in our brief, there are arguments for why even in that circumstance the lifting of a moratorium isn't the same as imposing it. But since my time is out, I just want to bring the Court back to Kootenai Tribe where we started, and I want to cite from page 1114 where this Court said, NEPA procedures do not apply to federal actions that maintain the environmental status quo. That is what we are saying here. Because this rule did not meaningfully go into effect, what the injunctions did was they suspended the effectiveness of the rule, thereby maintaining the status quo. When we came in with the state petitions rule and replaced the enjoined rule, all we did was maintain the status quo. Now, you can differ with the policy reasons, but that's not what this case is about. They're trying to use NEPA to prevent the agency from changing when all the agency did was maintain the status quo. And the District Court should be reversed on that, Your Honor. Thank you. We thank all counsel for the argument. And with that, that concludes the oral argument docket for today. And the Court will be adjourned until tomorrow. All rise.
judges: Beezer, Bybee, Bea